# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH DIVISION

| | |
|---|---|
| WILLIAM WALKER, Individually and on Behalf of Others Similarly Situated, <br><br> v. <br><br> MARATHON PETROLEUM CORPORATION and MPLX, LP | C.A. No.: 2:22-cv-1273 <br><br> Jury Trial Demanded |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Marathon Petroleum Corporation (Marathon Petroleum) and MPLX, LP (MPLX) (collectively, "Marathon") do not pay its Inspectors as required by the Fair Labor Standards Act (FLSA)

2. Instead, Marathon pays its Inspectors a flat daily rate for all hours worked in a workweek, including those in excess of 40 in a workweek.

3. Marathon's day rate plan violates the FLSA because the Inspectors are owed overtime for hours worked in excess of 40 in a week at the rate of one-and-one-half times their regular rates.

4. William Walker (Walker) worked for Marathon as an Environmental Inspector.

5. William Walker (Walker) brings this action to recover the unpaid overtime and other damages owed to Marathon's Inspectors.

### JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute. 29 U.S.C. § 216(b).

7. Venue is proper by agreement of the Parties.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Marathon

Petroleum and MPLX conduct substantial business in this judicial district and are subject to the Court's personal jurisdiction with respect to the civil action in question.

9. MPLX operates five complexes in the Marcellus shale, including processing, gathering and C2+ fractionation at the Houston Complex in Pennsylvania.

10. MPLX operates pipelines and compressor stations throughout Pennsylvania.

11. Marathon Petroleum and MPLX provide resources to gas stations throughout Pennsylvania.

## PARTIES

12. Walker started working for Marathon as an Environmental Inspector in February 2021.

13. Throughout his employment with Marathon, Walker was paid a flat daily rate for all the hours he worked including those in excess of 40 in a workweek.

14. Walker was paid daily rate regardless of hours or days worked, including those over 40 in a workweek.

15. Walker's consent to be a party plaintiff is attached as Exhibit 1.

16. Walker brings this FLSA collective action on behalf of himself and all other similarly situated Inspectors who were paid pursuant to Marathon's day-rate plan.

17. The FLSA class of similarly situated employees Walker seeks to represent consists of:

> **All Inspectors working for, or on behalf of, Marathon Petroleum and MPLX who were paid a day rate in the last three years** (the "Day Rate Inspectors").

18. Members of the proposed collective can be readily ascertained from Marathon's records.

19. Marathon Petroleum is a Delaware corporation with its headquarters in Findlay, Ohio.

20. MPLX is a Delaware limited Partnership with its headquarters in Findlay, Ohio.

21. Marathon Petroleum may be served with process by serving its registered agent for service of process: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

22. MPLX may be served with process by serving its registered agent for service of process: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

## FLSA COVERAGE

23. At all times hereinafter mentioned, Marathon was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all times hereinafter mentioned, Marathon was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. At all relevant times, Marathon has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

26. At all relevant times, Marathon has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, hard hats, smartphones/devices, computers, etc.) that have been moved in or produced for commerce.

27. In each of the past three years, Marathon's annual gross volume of sales has exceeded $500,000.

28. At all relevant times, Walker and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

29. At all relevant times hereinafter mentioned, Marathon treated Walker and the Day Rate Inspectors as employees and uniformly applied their day-rate pay practice to Walker and the Inspectors with no overtime compensation.

30. The uniform compensation scheme of paying its Inspectors a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

31. Whether Marathon did not consider Walker and the Day Rate Inspectors as its employees does not alter their status as employees for purposes of this FLSA collective action.

32. Marathon treated all their Day Rate Inspectors (including Walker) as employees by setting their work schedules, controlling their job assignments, withholding taxes from their pay, and maintaining their personnel records.

**FACTS**

33. Marathon Petroleum is a leading, integrated, downstream energy company.

34. MPLX is a midstream company that owns and operates gathering, processing, and fractionation assets, as well as crude oil and light product transportation and logistics infrastructure.

35. Marathon Petroleum formed and owns MPLX.

36. MPLX operates five complexes in the Marcellus shale, including processing, gathering and C2+ fractionation at the Houston Complex in Pennsylvania.

37. MPLX operates pipelines and compressor stations throughout Pennsylvania.

38. Marathon Petroleum and MPLX provide resources to gas stations throughout Pennsylvania.

39. Marathon conducts substantial business throughout Pennsylvania.

40. To achieve its business objectives, Marathon hires personnel (like Walker) to perform inspection services on its behalf.

41. Walker and the Day Rate Inspectors performed inspection services for Marathon.

42. As an Environmental Inspector, Walker is responsible for ensuring that Marathon pipeline projects complied with environmental and federal regulations.

43. Throughout his employment with Marathon, Walker was paid on day rate basis.

44. Walker's offer letter specifically states he will receive a day rate.

45. On a day-to-day basis Walker and the Day Rate Inspectors reported to and took their working orders from Marathon.

46. Marathon's Day Rate Inspectors, including Walker, regularly worked more than 40 hours a week.

47. Indeed, Marathon's Day Rate Inspectors often worked 10-12 hour shifts per day.

48. Walker routinely worked more than 60 hours a week.

49. For example, in the workweek ending on June 17, 2022, he worked 6 days and over 60 hours and was paid his flat day rate for each day worked.

50. Marathon's Inspectors were paid pursuant to their day rate pay plan with no time and a half compensation for overtime hours regardless of the number of hours worked that workweek.

51. Walker and the Day Rate Inspectors do and did not receive a salary.

52. Walker and the Day Rate Inspectors are not paid on a salary basis.

53. The compensation Walker and the Day Rate Inspectors actually earn is not reasonably related to any purported "salary."

54. Instead, Walker and the Inspectors received a day rate.

55. Walker and the Day Rate Inspectors did not receive overtime pay at time and a half.

56. This is true despite the fact that Walker and the Day Rate Inspectors regularly worked more than 40 hours a week.

57. Walker and the Day Rate Inspectors received the same daily rate each day regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

58. Walker and the Day Rate Inspectors work in accordance with the schedule set by Marathon.

59. Walker's work schedule is typical of the other Day Rate Inspectors' schedules.

60. Marathon controls Walker and the other Day Rate Inspectors' pay.

61. Likewise, Marathon controls Walker and the Day Rate Inspectors' work.

62. Marathon requires Walker and the Day Rate Inspectors to follow its policies and procedures.

63. Walker's and the Day Rate Inspectors' work must adhere to the quality standards put in place by Marathon.

64. Walker and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

65. Very little skill, training, or initiative was required Walker and the Day Rate Inspectors to perform their job duties.

66. Virtually every job function was pre-determined by Marathon, including the tools and equipment to use at a jobsite, the data to compile, the schedule of work, and other related work duties.

67. Walker and the Day Rate Inspectors were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Marathon's policies, procedures, and directives.

68. All Marathon's Inspectors perform duties similar to those Walker performed.

69. During Walker's employment with Marathon, Marathon exercised control over all aspects of his job like an employee.

70. Marathon did not require any substantial investment by Walker or the Day Rate Inspectors for them to perform the work required of them.

71. Marathon made large capital investments in buildings, machines, equipment, tools, and supplies in the business in which they worked.

72. Walker and the Day Rate Inspectors did not incur operating expenses like rent, payroll, marketing, and insurance.

73. Walker and the Day Rate Inspectors were economically dependent on Marathon during their employment with Marathon.

74. All of Marathon's Day Rate Inspectors regularly worked in excess of 40 hours in a workweek.

75. Marathon knew Walker and the Day Rate Inspectors regularly worked more than 40 hours in a week.

76. Instead of paying the Inspectors over time, they were only paid a daily rate for all hours worked, including those in excess of 40 in a workweek.

77. As a result, Marathon failed to pay the Inspectors proper overtime compensation for hours worked in excess of 40 in a workweek.

78. Marathon has been sued for this exact pay practice for inspectors performing work on its behalf.

79. Marathon knew that its Day Rate Inspectors were non-exempt and should have been paid hourly and time and a half overtime.

80. Upon information and belief, Marathon did not perform an audit or investigation to determine whether its Day Rate Inspectors were its employees.

81. Upon information and belief, Marathon did not perform an audit or investigation to determine whether its Day Rate Inspectors were exempt under the FLSA.

82. Marathon knew, or acted with reckless disregard for whether, Walker and the Day Rate Inspectors were properly compensated under the FLSA.

83. Marathon's failure to pay overtime to these Day Rate Inspectors was, and is, a willful violation of the FLSA.

**FLSA VIOLATIONS**

84. Marathon's day rate pay plan violates the FLSA because Walker and the other Day Rate Inspectors did not receive overtime pay for the hours they worked over 40 hours in a week.

85. Walker and the Day Rate Inspectors performed non-exempt work for Marathon.

86. Marathon knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

87. Marathon's failure to pay overtime compensation to the Inspectors was not based on any reasonable interpretation of the law.

88. All of Marathon's Day Rate Inspectors regularly worked in excess of 40 hours in a workweek.

89. Marathon knew Walker and the Day Rate Inspectors regularly worked more than 40 hours in a week.

90. Instead of paying the Inspectors over time, they were only paid a daily rate for all hours worked, including those in excess of 40 in a workweek.

91. As a result, Marathon failed to pay the Inspectors proper overtime compensation for hours worked in excess of 40 in a workweek.

92. Marathon entities have been sued for this exact pay practice for inspectors performing work on its behalf.

93. Marathon knew that its Day Rate Inspectors were non-exempt and should have been paid hourly and time and a half overtime.

94. Upon information and belief, Marathon did not perform an audit or investigation to determine whether its Day Rate Inspectors were its employees.

95. Upon information and belief, Marathon did not perform an audit or investigation to determine whether its Day Rate Inspectors were exempt under the FLSA.

96. Marathon's decision not to pay overtime made in good faith.

97. Accordingly, Walker and all those who are similarly situated are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorney's fees, and costs.

## COLLECTIVE ACTION ALLEGATIONS

98. Numerous employees have been denied overtime by Marathon's day rate pay plan.

99. From his observations and experience working for Marathon, Walker is aware that Marathon's illegal practices or policies have been imposed on other Inspectors.

100. The Inspectors all regularly worked in excess of 40 hours per week and received their flat daily rates for all hours worked.

101. These Inspectors are similarly situated to Walker in terms of *relevant* job duties, pay provisions, and employment practices.

102. Marathon's failure to pay overtime as required by the FLSA results from a generally applicable, systematic pay plan that is not dependent on the personal circumstances of the Inspectors.

103. Thus, Walker's experiences, job duties, compensation plan, and classification are typical of the experiences of the Day Rate Inspectors.

104. The specific job titles or precise job locations of the various Day Rate Inspectors do not prevent collective treatment.

105. Walker has no interests contrary to, or in conflict with, the Day Rate Inspectors. Like each Day Rate Inspector, Walker has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

106. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

107. Absent this action, many Day Rate Inspectors likely will not obtain redress of their injuries and Marathon will reap the unjust benefits of violating the FLSA.

108. Walker knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective.

109. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

110. All Day Rate Inspectors, regardless of their precise job requirements or rates of pay, are entitled to overtime for hours worked in excess of 40 in a week.

## JURY DEMAND

111. Walker demands a trial by jury.

## RELIEF SOUGHT

112. Wherefore, Walker prays for:

   (a) an order allowing Walker's FLSA claims to proceed as a collective action and directing notice to the other Inspectors;

   (b) judgment finding Marathon in violation of the FLSA;

   (c) judgment finding Marathon liable to Walker and the Day Rate Inspectors for unpaid overtime, and an equal amount of liquidated damages;

   (d) judgment awarding Walker and the Inspectors reasonable attorney's fees and costs of this action;

   (e) judgment awarding Walker and the Inspectors pre- and post-judgment interest at the highest rates allowed by law; and

   (f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
**Michael A. Josephson**
PA I.D. # 308410
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Richard M. Schreiber***
Texas Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com
*\*Pro Hac Vice application forthcoming*

**AND**

**Richard J. (Rex) Burch***
Texas Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
*\*Pro Hac Vice application forthcoming*

**AND**

**Joshua P. Geist**
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**