IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM WALKER, Individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARATHON PETROLEUM CORPORATION and MPLX, LP, <br><br> Defendants. | 2:22-CV-1273-NR |
| CHRIS HAMILTON, Individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARKWEST ENERGY PARTNERS, LP, <br><br> Defendant. | 2:23-CV-782-NR |

## <u>OPINION</u>

Before the Court are two motions to approve two settlement agreements in two related cases alleging violations of the Fair Labor Standards Act. Case No. 22-1273, ECF 12; Case No. 23-782, ECF 94. For the reasons below, the Court will deny these motions as unnecessary. The Court holds: (1) judicial approval is not required for settlement of a bona fide wage-and-hour dispute under the FLSA, for both a single-plaintiff agreement and a collective agreement; (2) judicial approval is also not required for the award of attorneys' fees as part of that agreement; and (3) there is no reason or authorization for the Court, as it has done before, to issue "comfort" orders approving these settlements. Since approval isn't legally required, these types

of orders serve no purpose, are the equivalent of improper advisory opinions, and waste party and judicial resources.

The motions to approve will be denied, and the parties are instructed to file stipulations of dismissal pursuant to the terms of their agreements.

## BACKGROUND

*Walker* and *Hamilton* concern allegations of similar wage-and-hour violations under the FLSA.  In both cases, Plaintiffs are inspectors for energy companies (MPLX and Marathon Petroleum in *Walker*; MarkWest Energy in *Hamilton*).  Case No. 22-1273, ECF 1, ¶¶ 4, 33-42; Case No. 23-782, ECF 1, ¶¶ 2, 34-42.  Also in both cases, Plaintiffs alleged that they were paid a flat daily rate for all hours worked, without overtime, even though Plaintiffs in both cases typically worked more than 40 hours per week.  Case No. 22-1273, ECF 1, ¶¶ 53-58; Case No. 23-782, ECF 1, ¶¶ 55-59.  As a result, Plaintiffs allege their employers failed to pay them proper overtime compensation for hours worked above 40 hours per week.  Case No. 22-1273, ECF 1, ¶ 91; Case No. 23-782, ECF 1, ¶ 86.  Each complaint also purports to bring claims on behalf of a collective.  Case No. 22-1273, ECF 1, ¶¶ 98-110; Case No. 23-782, ECF 1, ¶¶ 91-123.  The one major difference between the cases is that the District Court for the Southern District of West Virginia, where *Hamilton* was initially filed, conditionally certified the *Hamilton* Plaintiffs as a collective action (Case No. 23-782, ECF 37), while the *Walker* Plaintiffs here never moved for conditional certification.

The parties in both cases reached settlement agreements sometime in early May 2023.  Case No. 22-1273, ECF 9; Case No. 23-782, ECF 91.  On May 8, 2023, the *Hamilton* parties moved to transfer their case to the Western District of Pennsylvania, given its relatedness to *Walker*, so this Court could approve the settlement of the cases together, for the purpose of "convenience and to promote

judicial efficiency." Case No. 23-782, ECF 91, p. 1. The Court granted the motion to transfer. Case No. 23-782, ECF 92.

On June 2, 2023, the parties in both cases moved for judicial approval of their settlements. Case No. 22-1273, ECF 12; Case No. 23-782, ECF 94. The form and terms of the settlements are about the same, and vary only as to the specific dollar amounts and the names and number of plaintiffs:

**Walker Settlement Terms (Case No. 22-1273, ECF 13)**

| | |
|---|---|
| Gross Settlement Amount: | $88,306.74 |
| Attorneys' Fees | $35,322.70 |
| Attorneys' Out-of-Pocket Costs | $2,962.96 |
| Service Award to Mr. Walker | $2,500.00 |
| Settlement Allocation to Mr. Walker and Six Opt-In Plaintiffs[1] | $47,521.08 |

**Hamilton Settlement Terms (Case No. 23-782, ECF 96)**

| | |
|---|---|
| Gross Settlement Amount: | $106,693.26 |
| Attorneys' Fees | $42,677.30 |
| Attorneys' Out-of-Pocket Costs | $4,037.04 |
| Service Award to Mr. Hamilton | $2,500.00 |
| Settlement Allocation to Mr. Hamilton and Five Opt-In Plaintiffs[2] | $57,478.91 |

---

[1] Though these Plaintiffs "opted in," they are not part of a court-ordered collective because the *Walker* Plaintiffs never moved for conditional certification.

[2] These opt-in Plaintiffs formed a conditionally certified collective. Case No. 23-782, ECF 37.

After reviewing both agreements, the Court ordered additional briefing to better evaluate the agreements and to determine the scope of any necessary approval. Case No. 22-1273, ECF 15; Case No. 23-782, ECF 97. Specifically, the Court requested additional briefing on whether the parties negotiated attorneys' fees separately from the wage-and-hour settlements, and how the parties calculated the wage-and-hour damages to Plaintiffs. *Id.* The parties filed supplements on June 27, 2023. Case No. 22-1273, ECF 18; Case No. 23-782, ECF 98. The motions are now ready for disposition.

## DISCUSSION & ANALYSIS

Having reviewed the settlement agreements and relevant authority on the matter, the Court concludes that the FLSA does not require courts to approve FLSA wage-and-hour settlements, and that the Court lacks jurisdiction to even offer a "comfort" approval because that would amount to an advisory opinion. Thus, as explained in detail below, the Court must deny the parties' motions.

### I.   Judicial approval is not required for FLSA settlement agreements.

This Court has previously questioned whether private settlement of FLSA actions requires court approval, especially where the action did not concern a collective. *Horton v. Right Turn Supply, LLC*, 455 F. Supp. 3d 202, 205 (W.D. Pa. 2020) (Ranjan, J.). Other courts have also questioned aspects of the FLSA settlement procedure, including the need for court approval for dismissing FLSA actions under Federal Rule of Civil Procedure 68, and whether judicial authority extends to review of settled attorneys' fees. *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 398 (2d Cir. 2019) ("[J]udicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims."); *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (recognizing that "authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees"). And in the Fifth Circuit, "'a private compromise of claims under the FLSA is permissible where there

- 4 -

exists a bona fide dispute as to liability,' even without court approval." *Briz v. Protrans Int'l, LLC*, No. 22-144, 2023 WL 4205790, at *2 (S.D. Tex. June 27, 2023) (quoting *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012)).

Recently, Judge Wolson of the Eastern District of Pennsylvania concluded in a detailed and well-reasoned opinion what this Court has long suspected: "The rule requiring prior court approval of an FLSA settlement . . . has no support in the FLSA's text; it is a judge-made rule that makes litigation slower and more expensive and is at odds with the text of [Federal Rule of Civil Procedure] 41." *Alcantara v. Duran Landscaping, Inc.*, No. 21-3947, 2022 WL 2703610, at *1 (E.D. Pa. July 12, 2022). Judge Beason of the Western District of Kentucky reached the same conclusion. *Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635, 638 (W.D. Ky. 2022) ("[N]othing in these sections [of the FLSA] suggest a court must approve a settlement.").

This Court agrees with the analysis in *Alcantara* and *Askew*, and likewise finds nothing in the text of the FLSA (or in any Third Circuit case) that requires or even authorizes court approval for private-party FLSA settlement agreements.[3] The Court pauses though to consider whether the analysis is any different where, as here, the settlement agreement involves more than just the named plaintiff, and instead

---

[3] *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), is the basis for this approval procedure. In that case, the Eleventh Circuit rejected a pre-litigation private settlement in which employees waived their rights to back wages and liquidated damages from their employer, and settled the Department of Labor's claim against the employer. *Id.* at 1352. The court found that the employees were unrepresented by counsel, and were unaware of their rights under the FLSA and that the Department of Labor had determined that they were owed back wages. *Id.* at 1354. It concluded that to approve the settlement "would be in clear derogation of the letter and spirit of the FLSA." *Id.* That conclusion appears to be based on a policy rationale, not the FLSA's text, as well as perhaps the unique circumstances in that case. So, the Court finds *Lynn's Food Stores* inapposite, as the court in *Askew* explained in detail. 620 F. Supp. 3d at 640-43.

involves other opt-in plaintiffs.  After careful consideration, the Court concludes that there is no reason to treat an opt-in settlement agreement differently, for at least two reasons.

First, whether a settlement agreement is only between the named plaintiff and the employer or between a number of opt-in plaintiffs and the employer, there remains no basis in the text of the FLSA to require judicial approval.  Indeed, the court in *Askew* found as much in the context of a settlement agreement involving several opt-in plaintiffs.  *Askew*, 620 F. Supp. 3d at 643.

Second, there doesn't seem to be any great reason—based in statute, policy, or otherwise—to treat an "opt-in settlement agreement" differently, as though it were a Rule 23 classwide settlement.  In fact, an opt-in collective action and a class action differ in fundamental respects.

In the context of class-action settlements, there are serious principal-agent concerns for the Court to monitor.  That is, the plaintiffs' attorneys and the defendants "can settle on a basis that is adverse to the interests of the plaintiffs." John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 COLUM. L. REV. 669, 714 (1986); *see Horton*, 455 F. Supp. 3d at 206-07 (principal-agent problem concerns "the divide between missing class members (the principals), and their agents (class counsel), and the risks that the missing class members end up obtaining small benefits from a settlement compared to a large windfall reaped by class counsel").

To combat that problem, Rule 23 creates an expanded, fiduciary role for courts in the class-action context to "serve as a guardian of the rights of absent class members."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (cleaned up).  Rule 23(e) expressly requires court approval of settlements and imposes a host of other protective procedures, including

an opportunity for class members to opt-out, an opportunity for class members to object, preliminary judicial approval, and a final fairness hearing.  Fed. R. Civ. P. 23(e).  These procedural requirements exist "so that the court can assure, to the greatest extent possible, that the actions are prosecuted on behalf of the actual class members in a way that makes it fair to bind their interests.  The rule thus represents a measured response to the issues of how the due process rights of absentee interests can be protected and how absentees' represented status can be reconciled with a litigation system premised on traditional bipolar litigation."  *In re Gen. Motors.*, 55 F.3d at 785; *see also Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 524 n.3 (E.D. Pa. 2016) ("The *Girsh* factors grow out of two primary concerns: (1) class members may not be adequately represented or (2) class interests may not be adequately protected." (citations omitted)).

But in an FLSA collective action, each employee must affirmatively opt in to the action with his or her written consent filed in court to join the collective.  29 U.S.C. § 216(b).  "This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) (cleaned up).  In other words, the collective's very existence "depends upon the affirmative participation of opt-in plaintiffs."  *Id.* at 224.

Thus, the principal-agent problems involving absent class members are not as much of a concern in an FLSA collective action.  *See Kraus*, 155 F. Supp. 3d at 524 n.3 (E.D. Pa. 2016) (application of *Girsh* factors to FLSA settlements "misses the mark" (citations omitted)).  That makes sense, too.  Unlike in a class action, a collective action is not designed "to generate liability in favor of uninvolved class members."  *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003).  To the contrary, "§ 216(b) is a fundamentally different creature than the Rule 23 class action.  Even if the § 216(b) plaintiff can demonstrate that there are

other plaintiffs 'similarly situated' to him . . . he has no right to represent them. Under § 216(b), the action does not become a 'collective' action unless other plaintiffs affirmatively opt into the class by giving written and filed consent." *Id.* at 1249; *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (conditional certification of collective "does not produce a class with an independent legal status, or join additional parties to the action"). This means that there is no collective action without the active participation of other plaintiffs. That "fundamental, irreconcilable difference between § 216(b) and Rule 23" negates the need for rigid analysis and approval of a collective settlement akin to that for a class action. *Cameron-Grant*, 347 F.3d at 1249 (cleaned up).

In sum, there is no legal support and no particularly sound reason for the Court to treat an FLSA settlement agreement like a Rule 23 classwide settlement agreement and subject it to judicial scrutiny and approval.

## II.  Judicial approval is also unnecessary for approval of any attorneys' fee provision within the settlement agreement.

Because there is no authority under the FLSA to approve a settlement agreement, there is no authority to approve any attorneys' fee component of such a settlement agreement either. In fact, the Eighth Circuit recently considered this issue, and concluded the same; the Court finds the Eighth Circuit's approach to be consistent with the plain language of the FLSA. *See Barbee*, 927 F.3d at 1027 ("The parties were entitled to settle the attorney fee issue, and no law gave the district court authority to interfere with that unconditional right.").

The closest the text of the FLSA gets to discussing attorneys' fees is in Section 216(b), where it provides: "The court in such action shall, in addition to any judgment

awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).

This provision provides for approval of attorneys' fees only once plaintiffs obtain a *judgment*; this is like many other federal statutes, which provide for the prevailing party to move the Court for their attorneys' fees after they prevail, and judgment is entered on their behalf.  *See, e.g.*, 29 U.S.C. § 431(c) (attorneys' fees recoverable after judgment in action to review books and records of labor organizations); 29 U.S.C. § 2617(a)(3) (attorneys' fees recoverable after judgment in action to recover damages under Family Medical Leave Act).

But there is no judgment here.  And there is nothing otherwise in the language of Section 216(b) (or anywhere else in the FLSA) that provides a requirement for the court to approve a clause in a settlement agreement for payment of attorneys' fees and costs.

Absent any statutory authority, judicial approval of a provision in a settlement agreement concerning fees and costs is inappropriate.[4]

## III.   A comfort order is an advisory opinion.

This Court has granted motions for approval of FLSA settlements in the past, even though it has questioned whether that approval was necessary.  *E.g.*, *Horton*,

---

[4] Because the Eighth Circuit left open the question of whether FLSA settlement agreements must be approved, it found that "if" approval were required, then it would not extend to any "separately" negotiated attorneys' fees component.  *Barbee*, 927 F.3d at 1027 n.1 ("[I]f FLSA settlements are subject to judicial review, the court would retain the authority to ensure the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and there was no conflict of interest between the attorney and his or her client.").  The Court notes that the *Walker* and *Hamilton* parties represented that they negotiated attorneys' fees separately.  They didn't; the Court's view of "separately" means that the settlement agreement is negotiated and finalized, at least in principle, and then the parties turn to the question of negotiating fees.  That is not what happened here.  *See* Case No. 22-1273, ECF 18, p. 3 ("Once the Parties became close to finalizing the settlement, Plaintiffs' Counsel provided Defendants with a proposed allocation.  This separately listed

455 F. Supp. 3d at 205; *Penska v. T.S. Dudley Land Co., Inc.*, No. 20-435, 2021 WL 719661, at *1 (W.D. Pa. Feb. 24, 2021) (Ranjan, J.). The intention was "to provide the parties comfort." *Id.* On further thought, the Court concludes today that it really cannot provide approval of FLSA settlements "for comfort" because such approval amounts to an advisory opinion.

"Federal courts have no jurisdiction to render advisory opinions. Put another way, they may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) (cleaned up).

Approval of a FLSA settlement is a textbook advisory opinion. Under the *Lynn's Food Stores* framework, courts assess whether a settlement is fair and reasonable, and involved a bona fide dispute. *Alcantara*, 2022 WL 2703610, at *5. But what that really means is that courts must assess ***today*** whether the settlement agreement will withstand scrutiny if it is challenged later. *See id.* at *4 ("[I]t's one thing to say certain settlements are, or might be, unenforceable. It is something else to say that once a party brings an FLSA suit, the FLSA bars them from taking the risk that their settlement will be unenforceable."). Judicial approval of a FLSA settlement cannot affect the parties' rights in the specific case before the Court—it can only advise the parties about a hypothetical case down the line. The Court lacks the authority to issue that advisory opinion (unless a statute or rule specifically allows it—and here, there isn't one).

Court approval of FLSA settlements is also improper because it hinders "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R.

---

agreed upon attorneys' fees and costs. The allocations were approved by the Parties. The allocations were part of the settlement dialogue." (cleaned up)).

Civ. P. 1.  "[T]he requirement of court approval slows the resolution of FLSA settlements and, by extension, the payment of wages to plaintiffs," forces lawyers to expend more time and resources on the case (and charge higher fees in turn), and clogs court dockets.  *Alcantara*, 2022 WL 2703610, at *4.

Walker and Hamilton illustrate this waste.  Plaintiffs in *Walker* filed suit on September 2, 2022, and the docket remained inactive until May 2, 2023, at which time the Court ordered the parties to show cause that the case was, in fact, proceeding.  Case No. 22-1273, ECF 8.  It wasn't, because the parties settled the case one week later—yet, they have spent time, money, and energy solely to get approval of the settlement they already reached.  Case No. 22-1273, ECF 9.  Meanwhile, the parties in *Hamilton* expended resources to transfer the case to this Court from the Southern District of West Virginia "[f]or the Parties' convenience and to promote judicial efficiency" just to settle the case at the same time as *Walker*.  Case No. 23-782, ECF 91, p. 1.

Then, the parties spent considerable energy submitting briefs to justify approval, including by outlining the many *Girsh* factors for the Court to assess, as is customary.  *See Lyons v. Gerhard's Inc.*, No. 14-6693, 2015 WL 4378514, at *4 (E.D. Pa. July 16, 2015) ("When evaluating whether a proposed settlement is fair and reasonable, courts in the Third Circuit often turn to the nine-factor test [from *Girsh v. Jepson*] for evaluating proposed class action settlement agreements." (citations omitted)).  Briefing those factors is wasteful because they are usually just window dressing in FLSA cases—they often don't get to the heart of whether the settlement is fair and reasonable.  *See Horton*, 455 F. Supp. 3d at 206 ("[R]igid application of those factors is neither required nor appropriate in the FLSA context, and the Court believes that that is not a useful exercise in a case like this." (cleaned up)).

In short, the parties and courts do not benefit from a court-made rule requiring judicial approval of FLSA settlements for policy reasons that serve no relevant policy.

While it is understandable that parties would want to know that their settlements will not be rendered void in the future for failing to comply with the FLSA, the courts are not the place to get that comfort. If employers or employees are worried about the fairness or enforcement of their settlement agreement, they can seek supervision of the agreement from the Department of Labor, as the text of the FLSA allows. *See* 29 U.S.C. § 216(c) ("The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages."); *see also Lynn's Food Stores*, 679 F.2d at 1353 n.6 ("The waiver provision found in section 216(c) was intended to create an incentive for employers to voluntarily accept settlements supervised by the Department of Labor." (citation omitted)).

## **CONCLUSION**

For the reasons above, the Court will deny the Consent Motion for Settlement in *Walker* (Case No. 22-1273, ECF 12) and the Consent Motion to Approve Collective Action in *Hamilton* (Case No. 23-782, ECF 94) as unnecessary and unauthorized. In lieu of these motions, the parties may move to dismiss their case pursuant to Rule 41. An appropriate order follows.[5]

DATED: July 28, 2023                                    BY THE COURT:

                                                        /s/ *J. Nicholas Ranjan*
                                                        United States District Judge

---

[5] To the extent any party disagrees with this decision and seeks to appeal, the order shall include appropriate language under 28 U.S.C. § 1292(b).